IN THE

# United States Court of Appeals

## FOR THE SEVENTH CIRCUIT

VILLAGE OF OLD MILL CREEK, ET AL.,

*Plaintiffs-Appellants,*

**No. 17-2433**                     V.

ANTHONY M. STAR,

*Defendant-Appellee.*

and

EXELON GENERATION COMPANY, LLC,

*Intervening Defendant-Appellee.*

ELECTRIC POWER SUPPLY ASSOCIATION, ET AL.,

*Plaintiffs-Appellants,*

**No. 17-2445**                     V.

ANTHONY M. STAR, ET AL.

*Defendants-Appellees.*

and

EXELON GENERATION COMPANY, LLC,

*Intervening Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS VILLAGE OF OLD MILL CREEK, ET AL.

Paul G. Neilan                                       Patrick N. Giordano

LAW OFFICES OF PAUL G. NEILAN, P.C.     GIORDANO & ASSOCIATES, LTD.

1954 First St. #390                                 1710 Wesley Avenue

Highland Park, IL 60035                         Evanston, IL 60201

847.266.0464                                         847.905.0539

pgneilan@energy.law.pro                        patrickgiordano@dereglaw.com

*(counsel of record)*

*Counsel for plaintiffs-Appellants Village of Old Mill Creek, et al.*

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ..................................................................... 1

ARGUMENT ........................................................................................................ 4

I.    Consumer Plaintiffs' Preemption Claims are Justiciable. ......................... 4

A.    Consumer Plaintiffs have prudential standing for their preemption claims. ........... 4

B.    Consumer Plaintiffs Have a Cause of Action in Equity Against Illinois' Illegal ZEC Program. ................................................................... 7

II.   Defendants Do Not Effectively Rebut That The ZEC Program is Preempted By The Federal Power Act. ...................................................... 9

A.    The ZEC Program is conflict preempted by the Federal Power Act because FERC cannot assure just and reasonable rates if the ZEC Program exists. ........... 9

B.    The ZEC Program is field preempted by the Federal Power Act under the Supreme Court's ruling in *Hughes v. Talen Energy Marketing.* .......................... 15

III.  Defendant Exelon Generation and Defendant Star Have Not Established That Consumer Plaintiffs' Dormant Commerce Clause Claim Was Properly Dismissed. ............................................................................. 15

A.    Consumer Plaintiffs Have Standing for their Dormant Commerce Clause Claim. ................................................................................ 15

B.    The ZEC Program is in-state economic protectionism which violates the Dormant Commerce Clause. ......................................................... 16

IV.   Consumer Plaintiffs Are Entitled to a Ruling on Their Motion For Preliminary Injunction. ............................................................................ 16

CONCLUSION .................................................................................................. 17

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. PROC. 32(a) ........................ 19

CERTIFICATE OF SERVICE ............................................................................... 20

# TABLE OF AUTHORITIES

Cases

*AEP Texas North Co. v. Texas Indus. Energy Consumers*, 473 F.3d 581 (5th Cir. 2006) ....... 9

*Appalachian Power Co. v. Public Service Comm. of West Virginia*, 812 F.2d 898

   (4th Cir. 1987) ..................................................................................................... 9

*Arkansas Power & Light Co. v. Missouri Public Service Comm.*, 829 F.2d 1444

   (8th Cir. 1987) ..................................................................................................... 9

*Armstrong v. Exceptional Child Center*, 135 S.Ct. 1378 (2015) ...........................................10

*Ass'n. of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S., 150 (1970) ........... 7

*Ass'n. of Public Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939 (9th

   Cir. 2013) ........................................................................................................... 6

*Aux Sable Liquid Products v. Murphy*, 562 F.3d 1028 (7th Cir. 2008) ...................................17

*Clarke v. Securities Industry Association*, 479 U.S. 388 (1987)............................................. 7

*Ex Parte Young,* 209 U.S. 123 (1908)...................................................................................10

*Hughes v. Talen Energy Marketing*, 136 S. Ct 1288 (2016)............................................13, 17

*International Paper Co. v. Ouellette*, 479 U.S. 481 (1987).....................................................12

*Maryland v. Louisiana*, 451 U.S. 725 (1981) .......................................................................13

*Match-E-Be-Nash-She-Wish Band of Potawatomi Indians v. Patchak*,

   567 U.S. 209 (2012)............................................................................................ 7

*Mississippi Power & Light Co. v Mississippi ex rel. Moore*, 487 U.S. 354 (1988)..7, 13, 14, 15

*Nantahala Power & Light Co. v. Thornburg,* 476 U.S. 953 (1986) ...................................7, 13

*Northwest Central Pipeline v. Kansas Corp. Comm.*, 489 U.S. 493 (1989) ................... passim

*Nw. Requirements v. FERC*, 789 F.3d 796 (9th Cir. 2015)..................................................... 6

*Oneok, Inc. v. Learjet*, 135 S. Ct. 1591 (2015) .....................................................................14

*Sayles Hydro Associates v. Maughan*, 985 F.2d 451 (9th Cir. 1993) ........................................ 9

Statutes

20 ILCS 3855/1-75(d-5)(1) ...................................................................................6, 7

20 ILCS 3855/1-75(d-5)(2) .................................................................................. 6

220 ILCS 5/16-108(k) ......................................................................................... 8

220 ILCS 5/16-111(g) ..........................................................................................18

Other Authorities

Illinois Power Agency Final Zero Emission Standard Procurement Plan

   (October 31, 2017) ......................................................................................6, 12

Illinois Power Agency ZEC Procurement Schedule (October 27, 2017) ................................12

*PJM Interconnection, Proposed Enhancements to Energy Price Formation*

   (Nov. 15, 2017) ...............................................................................................17

*U.S. Dept. of Energy, Grid Resiliency Pricing Rule,* FERC Docket No. RM17-3-000 and

   RM18-1-000 (September 28, 2017) .....................................................................17

Administrative Orders

*Ass'n. of Businesses Advocating Tariff Equity Coalition of MISO Transmission Customers*

   *v. Midwest Independent System Operator, Inc.*, 149 FERC Par. 61049 (2014) .................. 9

*IMO American Electric Power Service Corp.,* 153 FERC 61167 (2015) .................................. 9

*Newman, et al. v. Potomac-Appalachian Transmission Highline*, 140 FERC Par. 61229

   (2012) ........................................................................................................... 9

*PJM Interconnection, LLC*, 151 FERC Par. 61,208, WL 3619479 (2015); Order on Reh. and

   Compliance, 155 FERC Par. 61,157 (2016) .......................................................17

## INTRODUCTION

Defendant-Appellee Anthony Star and Exelon Generation Company, LLC ("Defendants") dispute that the Federal Power Act preempts the Illinois statute requiring Zero Emission Credit payments from Illinois' electric utilities to nuclear power plants (hereafter, "ZECs" or "ZEC payments"). Defendants contend that the ZEC payments are similar to Renewable Energy Credit payments that utilities are required to make to power plants powered by solar, wind, and other renewable energy sources (hereafter, "RECs" or "REC payments"). Defendants contend that because ZEC payments are like REC payments, they fall within the state of Illinois' authority to regulate electricity production. But this argument fails. Comparison of Illinois' ZEC and REC programs simply illuminates why the ZEC program violates federal law and therefore is preempted.

The ZEC program is designed to reward the least efficient nuclear plants, while Illinois' REC program is designed to reward the most efficient renewable energy powered generating plants. As alleged in the Complaint of Village of Old Mill Creek, et al. ("Consumer Plaintiffs"), ZECs will be awarded only to Exelon Generation's Quad Cities and Clinton nuclear generating plants. A.130, 141-142 (Complaint, pars. 7, 53). If Quad Cities and Clinton do not receive ZECs, Exelon Generation Company, LLC ("Exelon Generation") has represented that these plants will "lose money in the near term" and will close. A.162-163 (Declaration of J. Jones, Exelon Nuclear, March 15, 2017). On the other hand, the REC program awards

1

RECs to renewable energy powered generators through sealed binding commitment bidding with selection of bids based on price. Illinois Power Agency Final Zero Emission Standard Procurement Plan (October 31, 2017), at 50[1]; 220 ILCS 5/16-111.5(e)(3).

Thus, REC prices are competitively determined and not tied to wholesale electricity prices in any respect. In stark contrast to the determination of REC prices, ZEC prices are set by a statutory formula tethered directly to wholesale electricity market prices. This approach is both field and conflict preempted by the Federal Power Act.

The ZEC price, which is initially set at the Social Cost of Carbon of $16.50 per megawatt-hour, is adjusted annually based on a wholesale market price index and a cap of the annual impact on consumers. 20 ILCS 3855/1-75(d-5)(1)(B) and (2). The nuclear plants will be able to collect any lost revenue as a result of the annual cap in any future year to the extent that the cap is not exceeded. 20 ILCS 3855/1-75(d-5)(2).

The upshot of the ZEC payments is that Clinton and Quad Cities will receive an estimated extra revenue of $235 million annually for ten years. Dist. Ct. Opin., at 10, A.169. This non-competitive revenue stream for two particular nuclear plants will lay waste to the competitive wholesale electricity markets in which they participate.

---

[1] Available at:. https://www.illinois.gov/sites/ipa/Documents/2018ProcurementPlan/Zero-Emission-Standard-Procurement-Plan-Approved.PDF

The Federal Energy Regulatory Commission ("FERC") has created an Independent Market Monitor to monitor the regional transmission organization known as PJM Interconnection, LLC ("PJM") and protect the public interest in regulation through competition. 18 CFR 35.28. The Independent Market Monitor has filed an amicus brief in this case which shows that implementation of the ZEC program will result in rates not being just and reasonable in the PJM market. Doc. No. 67, at 16-23.

Preservation of the competitive wholesale electricity markets is critical for consumers. According to the amici brief of the Illinois Chamber of Commerce and Illinois Industrial Energy Consumers ("IIEC") in support of Consumer Plaintiffs, the competitive wholesale electricity market has saved Illinois consumers at least $37 billion dollars since its inception in 1997. Doc. No. 61, at 7.

The reality of the ZEC program is that Exelon Generation threatened to shutter its Quad Cities and Clinton nuclear plants unless the plants got guaranteed revenues through the ZEC payments. Illinois capitulated and hastily enacted the ZEC program, which doesn't even require that Exelon Generation publicly disclose its operating costs to obtain ZEC subsidies supposedly necessary to "save" these plants. 220 ILCS 3855/1-75 (d-5)(1)(A).

The Illinois General Assembly festooned the ZEC program with environmental flags to try to make ZECs look more like RECs, but the ZEC program's links to, and massive effects on, the wholesale electricity market render

the ZEC program field and conflict preempted. The state's blatant economic protectionism also violates the dormant Commerce Clause.

As set forth below, Consumer Plaintiffs have asserted proper preemption claims and a dormant Commerce Clause claim, and have proper standing to assert all of these claims. Therefore, this Court should reverse the district court's dismissal of their Complaint and order the court to conduct hearings on their requests for preliminary and permanent injunctive relief.

## ARGUMENT

I.    Consumer Plaintiffs' Preemption Claims Are Justiciable.
    A.    Consumer Plaintiffs Have Prudential Standing For Their Preemption Claims.

Exelon Generation asserts that Consumer Plaintiffs lack prudential standing for their preemption claims because those claims are outside the Federal Power Act's "zone of interests." Exelon Gen Br., at 25. (Defendant Anthony Star, on the other hand, does not even attempt to argue that Consumer Plaintiffs lack prudential standing.)

Exelon Generation argues that because Consumer Plaintiffs' claimed injury is from a retail charge on their electric bill and because the state has exclusive authority over retail charges, it is outside the Federal Power Act's zone of interests. *Id.* Exelon Generation is wrong because retail consumers have standing to challenge wholesale charges from generating plants to utilities *when these charges will be passed through from the utilities to the retail consumers*.

Under the Illinois statute, all ZEC payments utilities make to nuclear generating plants are automatically passed through to Consumer Plaintiffs and

other Illinois electricity consumers. 220 ILCS 5/16-108(k). Therefore, Consumers Plaintiffs' preemption claims fall squarely within the Federal Power Act's zone of interests.

In their initial Appellant brief, Consumer Plaintiffs rely on two FERC Orders that support their prudential standing. *Ass'n. of Businesses Advocating Tariff Equity Coalition of MISO Transmission Customers v. Midwest Independent System Operator, Inc.*, 149 FERC Par. 61049, 61333 (2014); *Newman, et al. v. Potomac-Appalachian Transmission Highline*, 140 FERC Par. 61229, 62153-54 (2012). Exelon Generation belittles those two orders on the ground that they "address administrative complaints not a federal cause of action." Exelon Gen. Br., at 25. But these FERC orders are important because they establish retail consumers have standing to challenge the establishment of wholesale charges pursuant to the Federal Power Act when those charges (or components of the charges) will be passed through by utilities to retail consumers. *Id.*; *see also IMO American Electric Power Service Corp.,* 153 FERC 61167 (2015). These two FERC orders are as applicable to a federal cause of action as an administrative claim. Exelon Generation has not provided any basis for this Court to ignore the principle they establish.

Consumer Plaintiffs also rely in their initial brief on *Ass'n. of Public Agency Customers v. Bonneville Power Admin.*, 733 F.3d 939 (9th Cir. 2013), to support the same proposition. Exelon Generation responds that the case actually supports its position because it involved retail, not wholesale, sales. Exelon Gen. Br., at 25. The

case actually held, however, that retail consumers had prudential standing to contest wholesale charges that were passed through by utilities to the retail consumers. Moreover, *Nw. Requirements v. FERC*, 789 F.3d 796 (9th Cir. 2015), the other Ninth Circuit case relied upon by Exelon Generation, simply is not relevant to the zone of interests inquiry because it denied *wholesale* customers prudential standing under the Federal Power Act on grounds they were not aggrieved by the FERC order in question in that case. 789 F.3d at 807.

As the National Association of State Utility Consumer Advocates ("NASUCA") stated in their amicus brief supporting Consumer Plaintiffs' standing in this case, "the [Federal Power] Act's separation between federal jurisdiction over wholesale rates and state jurisdiction over retail rates has never been used to prevent access to FERC and the federal courts." Doc. No. 58, at 4. As NASUCA further stated, "this is because it is well established that wholesale rates are passed through to retail customers, thus impacting directly what they pay on their monthly bills." *Id.*, citing *Mississippi Power & Light Co. v Mississippi ex rel. Moore*, 487 U.S. 354, 365, 370-373 (1988) and *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 959-961, 970 (1986).

Exelon Generation simply ignores the substantial Supreme Court precedent cited by Consumer Plaintiffs that the zone of interests test is "not a particularly demanding one." *Clarke v. Securities Industry Association*, 479 U.S. 388, 400 (1987); *Match-E-Be-Nash-She-Wish Band of Potawatomi Indians v. Patchak*, 567 U.S. 209 (2012). The test asks only whether plaintiffs' claims are *arguably*

6

protected by the Federal Power Act, a standard Consumer Plaintiffs have easily met here. *Ass'n. of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S., 150, 152-53 (1970); *see also* NASUCA Amicus Br., Doc. No. 58, at 6-8. Consumer Plaintiffs therefore have standing to raise their preemption claims.

**B.    Consumer Plaintiffs Have a Cause of Action In Equity Against Illinois' Illegal ZEC Program.**

Defendant Exelon Generation also asserts that neither Consumer Plaintiffs nor the plaintiffs led by the Electric Power Supply Association (the "EPSA Plaintiffs") have an equitable preemption claim because they are "bystanders" who cannot enforce the Federal Power Act against the state actors in this case. Exelon Gen. Br., at 15-23. This argument is wrong for the reasons stated in Sections I.B and I.C of EPSA Plaintiffs' Reply Brief. Moreover, this argument does not apply to Consumer Plaintiffs' preemption claims in any respect because Consumer Plaintiffs are not bystanders.

Exelon Generation concedes that federal courts have repeatedly upheld "nonbystander" Federal Power Act preemption claims. *Id.*, at 18-19. Because the Consumer Plaintiffs in this case also are "nonbystanders," the Court should reverse the district court and reinstate Consumer Plaintiffs' preemption claims. Simply put, Consumer Plaintiffs are not bystanders because they are directly affected by the unconstitutional monthly ZEC charges on their electricity bills. In fact, Consumer Plaintiffs have been pre-paying ZEC charges every month since May 2017, even

though the ZEC procurement has yet to be held. A.171-192; Illinois Power Agency
ZEC Procurement Schedule (October 27, 2017).[2]

Exelon Generation specifically recognizes in its Brief that federal courts have
frequently upheld Federal Power Act preemption claims brought by "non-bystanders."
Exelon Gen. Br., at 18; *see, e.g.*, *Sayles Hydro Associates v. Maughan*, 985 F.2d 451
(9th Cir. 1993); *Appalachian Power Co. v. Public Service Comm. of West Virginia*, 812
F.2d 898 (4th Cir. 1987). Exelon Generation further concedes that several courts have
upheld Federal Power Act preemption claims when the challenged actions set
plaintiffs' retail rates (as is the case here). Exelon Gen. Br., at 18; *see AEP Texas
North Co. v. Texas Indus. Energy Consumers*, 473 F.3d 581 (5th Cir. 2006); *Arkansas
Power & Light Co. v. Missouri Public Service Comm.*, 829 F.2d 1444 (8th Cir. 1987).

Defendant Exelon Generation even admits that federal courts have
frequently exercised equity jurisdiction over claims when state actions directly
harmed them. Exelon Gen. Br., at 18-19. Of course, that is the situation here
because the state's actions have caused a large monthly increase to Consumer
Plaintiffs' electricity bills and a total annual increase of $235 million to Illinois
electricity consumers. A.171-193; Illinois Power Agency Final Zero Emission
Standard Procurement Plan (October 31, 2017), at 30.

Federal law immunizes Consumer Plaintiffs from the state action that
resulted in the ZEC charges. As the Supreme Court recognized in *Armstrong v.
Exceptional Child Center*, 135 S.Ct. 1378 (2015), "if an individual claims federal law

---

[2] Available at: https://www.ipa-energyrfp.com/wordpress/wp-content/uploads/2014/05/IPA-
2017-ZEC-RFP-Calendar_31-OCT-2017.pdf

immunizes [the individual] from state regulation, the court may issue an injunction finding the state regulation preempted." 135 S. Ct., at 1384. *Armstrong* makes clear that Consumer Plaintiffs do have a preemption cause of action in equity against Defendant Anthony Star in his official capacity as Director of the Illinois Power Agency. *Armstrong* makes clear that such a claim does in fact fall under the *Ex Parte Young* exception to the state sovereign immunity doctrine. *Ex Parte Young,* 209 U.S. 123 (1908).

## II.   Defendants Do Not Effectively Rebut That The ZEC Program Is Preempted By The Federal Power Act.

### A.  The ZEC Program Is Conflict Preempted By The Federal Power Act Because FERC Cannot Assure Just and Reasonable Rates If The ZEC Program Exists.

Exelon Generation repeatedly quotes *Northwest Central Pipeline v. Kansas Corp. Comm.*, 489 U.S. 493 (1989), in support of the proposition that the ZEC program is not conflict preempted by the Federal Power Act. Exelon Gen. Br., at 14, 52-53, 56. But Exelon Generation also truncates the most important sentence from the Supreme Court's opinion in *Northwest Central*. Exelon Generation's conspicuous omission totally distorts the opinion's meaning.

According to Exelon Generation, the Supreme Court stated in *Northwest Central* that "conflict preemption analysis must be applied sensitively in this area to prevent the diminution of the role Congress reserved to the states." Exelon Gen. Br., at 52. But review of the complete sentence shows that Exelon Generation omits the key phrase of the opinion regarding preservation of the federal role:

> Conflict preemption analysis must be applied sensitively in this area so to prevent the diminution of the role Congress reserved to the states *while at the same time preserving the federal role.*

489 U.S. at 515 (emphasis added).

In other words, the Supreme Court specifically acknowledged in *Northwest Central* that there may be circumstances in which the state regulation of production on matters within federal control is so extensive and disruptive of interstate commerce that federal accommodation must give way to federal preemption. *Northwest Central*, 489 U.S. at 517. Indeed, as the Supreme Court unanimously stated in that case, "state regulation of production may be preempted as conflicting with FERC's authority . . . if state regulation prevents attainment of FERC's goals. . ." 489 U.S. at 515 ; *see also International Paper Co. v. Ouellette*, 479 U.S. 481, 493- 495 (1987).

Ignoring Count II of Consumer Plaintiffs' Complaint (A.147-149), Exelon Generation contends that Plaintiffs do not identify any FERC goal to which the ZEC program causes clear damage. Exelon Gen. Br., at 53. But as Consumer Plaintiffs set forth in paragraphs 72-80 of their Complaint, this is a case where the federal goal of assuring just and reasonable wholesale rates is fatally compromised by the ZEC program. A.147-149. The ZEC program prevents FERC from achieving its goal of just and reasonable wholesale rates because it grotesquely distorts FERC's market-based system for determining just and reasonable wholesale rates.

Exelon Generation next argues that the district court was correct to reject conflict preemption because "any market distortion caused by subsidizing nuclear

10

power can be addressed by FERC." Exelon Gen. Br., at 56; Dist. Ct. Op., at 34. But Exelon Generation has it backwards. As part of FERC's mandate to assure just and reasonable rates, the law protects FERC's regulatory authority if necessary through preemption. The rule of law is not that the state may interfere with FERC's authority and if the state's interference causes a consumer harm in the process, the consumer can always later approach FERC with a claim that the state law has led to market distortion. Rather, the rule in the first instance, as stated unanimously by the Supreme Court in *Northwest Central*, is that if state regulation prevents attainment of FERC's goals, then the state's regulation of production "may be preempted as conflicting with FERC's authority." 489 U.S. at 515-516.

Assuming *arguendo* that nuclear plants are not being properly compensated, it is the job of FERC, not the states, to remedy that problem. If states are permitted to take this action instead, it makes FERC's job of insuring just and reasonable rates impossible. Illinois "cannot regulate in a domain Congress assigned to FERC and then require FERC to accommodate [the state's] intrusion." *Hughes v. Talen Energy Marketing*, 136 S. Ct 1288, at 1298 fn. 11 (2016); *see also Maryland v. Louisiana*, 451 U.S. 725, 751 (1981).

For example, in *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354 (1988), FERC held that certain nuclear power plant charges to an electric utility were just and reasonable. The Mississippi Public Service Commission then attempted to inquire whether the costs charged in constructing and completing the nuclear power plant were prudent and should be passed through to retail

consumers. The Supreme Court held, however, that the state had no authority to do so. 487 U.S. at 374-75; *see also Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953. In other words, the state of Mississippi was barred from taking action that interfered with FERC's ability to establish just and reasonable wholesale rates. Recently, in *Oneok, Inc. v. Learjet*, 135 S. Ct. 1591 (2015), the Supreme Court made clear that *Mississippi Power* was a "conflict preemption case" and should be applied as such. 135 S. Ct. at 1601-02.

*Mississippi Power* stands for the proposition that the mere fact that there is a dual federal and state regulatory scheme does not mean that there is an adequate mechanism for resolving jurisdictional conflicts in every case. Rather, *Mississippi Power* makes clear that where a state oversteps its bounds and interferes with FERC's domain, the Court will not hesitate to preempt the state action.

Indeed, as Exelon Generation itself concedes on page 56 of its Brief, in *Mississippi Power*, FERC had no avenue to review a cost recovery determination by the state (i.e., a determination of what nuclear power plant costs should be charged to retail consumers). Exelon Gen. Br., at 56. Therefore, as Exelon Generation points out, the Supreme Court concluded that only by applying conflict preemption analysis could some degree of harmony be achieved. *Id.*, citing *Mississippi Power*, 485 U.S. at 356-57 and *Northwest Central*, 489 U.S. at 515 n.12.

Likewise, in the instant case FERC cannot review the state's determination of the amount of the ZEC payments. Once the ZEC charges are established, FERC cannot assure just and reasonable rates. Therefore, this Court should hold, just as

the Supreme Court did in *Mississippi Power*, that the state's interference – here, through the ZEC program – is conflict preempted and cannot stand.

The proper regulatory approach to establish just and reasonable charges is for FERC and regional transmission organizations ("RTOs") to take actions designed to increase (or reduce) revenues for nuclear plants, as appropriate. In fact, FERC has already acted to increase capacity charges for nuclear plants within PJM when it approved a capacity performance product for PJM's capacity auction. *PJM Interconnection, LLC*, 151 FERC Par. 61,208, WL 3619479 (2015); Order on Reh. and Compliance, 155 FERC Par. 61,157 (2016).

Additionally, FERC is currently considering the Grid Resiliency Pricing Proposal by the U.S. Department of Energy which if adopted will increase charges for nuclear (and coal) plants within PJM. *U.S. Dept. of Energy, Grid Resiliency Pricing Rule,* FERC Docket No. RM17-3-000 and RM18-1-000 (September 28, 2017). Moreover, PJM made a price formation proposal on November 15, 2017 that also would raise prices for nuclear plants and other "inflexible" generating plants if it is approved by FERC. *PJM Interconnection, Proposed Enhancements to Energy Price Formation* (Nov. 15, 2017).[3]

Regardless of one's view on the substance of these actions and proposed actions by FERC and PJM, they reflect the proper federal regulatory approach to establish just and reasonable wholesale rates. In contrast, if this Court allows Illinois' subsidies directed only to Exelon Generation's Clinton and Quad Cities

---

[3] Available at: http://www.pjm.com/-/media/library/reports-notices/special-reports/20171115-proposed-enhancements-to-energy-price-formation.ashx.

nuclear plants to stand, it will be impossible to establish just and reasonable wholesale rates. If two particular plants get substantial extra revenues as a result of the actions of one state, capacity and energy market rules simply cannot be revised in a manner that is fair to anyone, and in particular to consumers.

While Exelon Generation attempts to analogize the ZEC program to states' programs for renewable energy powered generators (Exelon Gen. Br., at 55), those programs can be distinguished from the ZEC program. In the instant case the Independent Market Monitor for PJM has taken the position that the ZEC subsidies will totally disrupt PJM's competitive markets, a position it has never taken with regard to renewable energy powered generators. Doc. No. 67, at 21-22. Moreover, unlike the nuclear plants at issue here, which were fully paid for by consumers of regulated utilities and then voluntarily divested by the utilities to non-state regulated subsidiaries, renewable energy powered generators have had competitive risk at all times. A.142 (Consumer Plaintiffs' Complaint, par. 55); 220 ILCS 5/16-111(g).

In short, provision of $235 million in additional annual revenues to the Quad Cities and Clinton nuclear plants in competitive wholesale electricity markets with hundreds of other generating plants will prevent FERC from assuring just and reasonable rates in those markets. Courts must apply conflict preemption on a case-by-case basis. *See, e.g., Aux Sable Liquid Products v. Murphy*, 562 F.3d 1028 (7th Cir. 2008). Based on the facts of this case, this Court should find that the ZEC program is conflict preempted.

**B. The ZEC Program Is Field Preempted By The Federal Power Act Under The Supreme Court's Ruling In *Hughes v. Talen Energy Marketing.***

Consumer Plaintiffs adopt Section II of EPSA Plaintiffs' Reply Brief, which establishes that the ZEC program is field preempted by the Federal Power Act under the Supreme Court's ruling in *Hughes v. Talen Energy Marketing, LLC*, 136 S. Ct. 1288 (2016).

**III. Defendants Have Not Established That Consumer Plaintiffs' Dormant Commerce Clause Claim Was Properly Dismissed.**

**A. Consumer Plaintiffs Have Standing For Their Dormant Commerce Clause Claim.**

Defendants contend that Consumer Plaintiffs do not have dormant Commerce Clause standing on grounds the Consumer Plaintiffs' injury is not traceable to the alleged illegality because the injury would continue to exist even if the ZEC program were cured of the alleged discrimination. Exelon Gen. Br., at 47-48. But Defendants simply ignore the fact that Consumer Plaintiffs have alleged that the discriminatory aspect of the ZEC program is that Consumer Plaintiffs must pay for ZEC purchases from Clinton and Quad Cities even if they are purchasing electricity from competitive suppliers providing electricity 100% from out-of-state generating plants. A.132 (Consumer Plaintiffs' Complaint, par. 15, 62).

Any price advantage which the out-of-state generation can provide to Consumer Plaintiffs is directly affected by the obligation to pay the ZEC charges. Meanwhile, consumers in other states within PJM and the MidAmerican Independent System Operator ("MISO") do not have to pay ZEC charges even if

they buy power generated by Clinton or Quad Cities. A.145-146 (Consumer Plaintiffs' Complaint, par. 65).

Illinois simply cannot cure the ZEC program's discrimination because it has no authority to impose ZEC charges on consumers in other states. Since Illinois cannot cure the ZEC program of the discrimination alleged, injuries to Consumer Plaintiffs are clearly traceable to the illegality alleged. As a result, Consumer Plaintiffs have standing for their dormant Commerce Clause claim because their injuries would be redressed by invalidation of the ZEC program.

### B.  The ZEC Program Is In-State Economic Protectionism Which Violates the Dormant Commerce Clause.

Consumer Plaintiffs adopt Sections IV.B., IV.C and IV.D of EPSA Plaintiffs' Reply Brief which establish that the ZEC program is in-state economic protectionism which violates the dormant Commerce Clause.

### IV.  Consumer Plaintiffs Are Entitled To A Ruling On Their Motion For Preliminary Injunction.

As shown above and in Consumer Plaintiffs' initial brief, Consumer Plaintiffs have stated valid conflict preemption, field preemption, and dormant Commerce Clause causes of action, and have standing to raise these claims.

Accordingly, the district court's denial of Consumer Plaintiffs' motion for a preliminary injunction on grounds that they have not pled valid causes of action should be reversed and the case remanded for further consideration of this motion.

## CONCLUSION

Consumer Plaintiffs respectfully request this Court to reverse the District Court's dismissal of Plaintiffs' causes of action in Counts I, II, and III and to remand this case with instructions to the district court to give full and proper consideration to the Consumer Plaintiffs' motion for a preliminary injunction and request for a permanent injunction.

Respectfully submitted,

By: /s/ *Patrick N. Giordano*
Patrick N. Giordano
Patrick N. Giordano
GIORDANO & ASSOCIATES, LTD.
1710 Wesley Avenue
Evanston, IL 60201
847.905.0539
patrickgiordano@dereglaw.com
(counsel of record)


Paul G. Neilan
LAW OFFICES OF PAUL G. NEILAN, P.C.
1954 First St. #390
Highland Park, IL 60035
847.266.0464
pgneilan@energy.law.pro

*Attorneys for Plaintiffs-Appellants Village of Old Mill Creek, et al.*

## CERTIFICATE OF COMPLIANCE

This brief is in 12 pt. Century font and therefore complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) & (6), This brief complies with the type-volume limitation of Fed. R. App. P.32(a)(7)(B) because this brief contains 4,581 words.

Dated: December 12, 2017          /s/ Patrick N. Giordano

Patrick N. Giordano
Attorney for Plaintiffs-Appellants

Paul G. Neilan                              Patrick N. Giordano
LAW OFFICES OF PAUL G. NEILAN, P.C.  GIORDANO & ASSOCIATES, LTD.
1954 First St. #390                         1710 Wesley Avenue
Highland Park, IL 60035                      Evanston, IL 60201
847.266.0464                                847.905.0539
pgneilan@energy.law.pro                      patrickgiordano@dereglaw.com
                                             (counsel of record)

## CERTIFICATE OF SERVICE

I certify that on December 12, 2017, I caused a copy of the foregoing brief to

be filed upon all counsel of record by filing it electronically via the Court's CM/ECF

system.

/s/ Paul G. Neilan

Paul G. Neilan
Attorney for Plaintiffs-Appellants
1954 First Street, #390
Highland Park, IL 60035
847.266.0464
pgneilan@energy.law.pro